**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

**CHERYL KELLER,**

                       **Plaintiff,**

     v.                                                                    1:19-CV-662
                                                                                  (FJS/CFH)

**SCHOHARIE COUNTY DEPARTMENT OF
SOCIAL SERVICES; LANA BALDWIN,** *in her
individual and official capacity*; **SANDY WOODS,**
*in her individual and official capacity*; **and JOHN
AND/OR JANE DOE**, *in his or her respective
individual and official capacities, with fictitious name
intended to represent other potential defendant(s)
who may have been involved in the incidents that
violated Plaintiff's federal rights, but whose real
name(s) and level of involvement is currently unknown
to Plaintiff,*

                       **Defendants.**

---

| | |
|---|---|
| **APPEARANCES** | **OF COUNSEL** |
| **LAW OFFICE OF VINCENT U. UBA**<br>750 Broadway<br>Albany, New York 12207<br>Attorneys for Plaintiff | **VINCENT U. UBA, ESQ.** |
| **JOHNSON & LAWS, LLC**<br>648 Plank Road, Suite 204<br>Clifton Park, New York 12020<br>Attorneys for Defendants | **APRIL J. LAWS, ESQ.**<br>**LORAINE CLARE JELINEK, ESQ.** |

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

Cheryl Keller ("Plaintiff") commenced this action against the Schoharie County Department of Social Services ("Defendant County" or "DSS"), DSS Supervisor Sandy Woods ("Defendant Woods"), and DSS caseworker Lana Baldwin ("Defendant Baldwin") seeking compensatory damages, punitive damages, attorney's fees, and costs for alleged violations of her constitutional rights. *See generally* Dkt. No. 1, Compl. Defendants have moved to dismiss Plaintiff's complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Dkt. No. 5. In response, Plaintiff filed a cross-motion for leave to amend her complaint, and she included a copy of her proposed amended complaint with that motion. *See* Dkt. No. 10.

**II. BACKGROUND**

Plaintiff alleges that in 2015 she was the victim of domestic violence at the hands of her estranged husband. *See* Dkt. No. 1 at ¶ 21.[1] According to Plaintiff, Defendants became involved with Plaintiff's family at that time and accused Plaintiff of engaging in domestic violence in the presence of her then-minor daughter ("CK").[2] *See id.* at ¶ 22.

---

[1] Since this is a motion to dismiss, the facts are taken from Plaintiff's original complaint. The Court notes, however, that Plaintiff's original complaint has very few facts, and they are haphazardly dispersed throughout the pleading.

[2] Plaintiff fails to disclose in her complaint that Defendants initially became involved with her when they "received a report in August 2014 for Plaintiff's inadequate guardianship, verbal abuse, and infliction of serious physical injuries on CK." *See* Dkt. No. 5-1, Defs' Memorandum in Support, at 10, n.1; *see also* Dkt. No. 11-1, Ex. A at 9-14. Throughout the pendency of Defendant County's investigation, the Schoharie County Family Court issued *three* orders of

Plaintiff alleges that on or about July 7, 2016, and on various prior and subsequent occasions up until May of 2017, Defendant Baldwin told then 17-year-old CK that Plaintiff "has mental health issues" and "that [P]laintiff should be on medication but she is not," or words to that effect. *See id.* at ¶ 17. Plaintiff claims that this disclosure caused CK to "hate" Plaintiff and "not want to have anything to do with" her. *See id.* at ¶ 19.

Plaintiff also alleges that, during that same time period, Defendants gave "biased, unjustified, and undue preference" to Plaintiff's estranged husband in connection with which parent was suitable to have custody of CK. *See id.* at ¶ 20. Plaintiff claims that, throughout the underlying Family Court proceeding from 2015 through May of 2017, Defendants "aided and abetted" Plaintiff's estranged husband and "constantly put [P]laintiff's then minor child CK in harmful situations which has caused severe and irreparable harm[.]" *See id.* at ¶ 24.

Furthermore, Plaintiff alleges that sometime between February 25, 2016, and May of 2017, she "attempt[ed] to present her side of the story" to Defendants, who "refuse[d] to listen"; and, on one occasion, Defendant Woods "rolled her eyes" at Plaintiff. *See id.* at ¶ 25. Plaintiff also

---

protection. *See generally* Dkt. No. 11-1, Ex. A. The first order of protection, issued November 19, 2014, ordered that Plaintiff must "refrain from offensive conduct and corporal punishment, and refrain from domestic violence in the presence of the child." *See id.* at 5. The Family Court found that Plaintiff violated that order of protection in June of 2015. *See id.* at 21. At that time, the Family Court issued a modified order of protection ordering that Plaintiff stay away from CK, her home, and her school, except when exercising such contact as approved by Defendant County. *See id.* at 24. The Family Court found that Plaintiff violated the second order of protection on August 19, 2015. *See id.* at 27. The Family Court issued its third order of protection on November 2, 2015, which again required Plaintiff to stay away from CK. *See id.* at 30. The Court takes judicial notice of these Orders that the Family Court issued, as well as Defendants' Petition for Neglect filed against Plaintiff, when considering the pending motions. *See Uwadiegwu v. Dep't of Soc. Servs.*, 91 F. Supp. 3d 391, 393 n.1 (E.D.N.Y. 2015) (holding that two neglect petitions filed against the plaintiff and several orders that the Family Court issued may be considered as "'matters of which judicial notice may be taken'" (quotation omitted)).

claims that, on another occasion, Defendant Baldwin "intimidated" Plaintiff from reporting domestic violence to the police. *See id.*

Lastly, Plaintiff contends that, on or about August 16, 2016, Defendants compelled Plaintiff to use a psychologist, Dr. Silverman, to counsel her and CK. *See id.* at ¶ 27. At the counseling session, Plaintiff alleges that CK made "hurtful" comments to her such as "… you're so stupid" and "I'll never live with you"; and, in response, Dr. Silverman said, "I agree." *See id.* at ¶ 28. Plaintiff contends that Dr. Silverman had once conducted an evaluation of her family and that it was "improper and against the ethics of the field of psychology" for Defendants to compel Plaintiff and her daughter to use Dr. Silverman's services. *See id.* at ¶ 30. Additionally, Plaintiff alleges that "Dr. Silverman had his office [i]n the same building and location as [ ] [D]efendants, thereby giving rise to an inference of collusion, bias, and impartiality." *See id.* at ¶ 31. Plaintiff claims that Dr. Silverman's report "favored [P]laintiff's position more as a parent" and disfavored her estranged husband's position; yet, Plaintiff claims, Defendants withheld that report from Plaintiff even after she made requests for a copy of it. *See id.* at ¶¶ 32-33.

As a result of these actions, Plaintiff claims that she was "wrongfully and unlawfully deprived of her God endowed and constitutionally guaranteed right to be free from undue and unlawful interference with her parent/child relationship" with CK; she was subjected to extreme emotional distress; and her relationship with her daughter has been "irreparably damaged." *See id*. at ¶¶ 42-44. Plaintiff filed her complaint on June 4, 2019, alleging the following three causes of action, each brought pursuant to 42 U.S.C. § 1983, against all Defendants:

(1) Violation of Plaintiff's Fourteenth Amendment Due Process rights by unlawfully interfering with her parent/child relationship;

(2) Violation of Plaintiff's constitutional and federal right to privacy; and

(3) Abuse of legal process.

*See id.* at ¶¶ 47-66.

## III. DISCUSSION

### A. Legal standards

A motion to dismiss pursuant to Rule 12(b)(6) "challenges only the 'legal feasibility' of a complaint." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 558 (2d Cir. 2016) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting [*Bell Atl. Corp. v. Twombly*, 550 U.S. 544,] 570, 127 S. Ct. 1955). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations … a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.] …" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotations omitted). "Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted). When making its decision, this court must "accept all well-pleaded facts as true and consider those facts in the light most favorable to the plaintiff." *Chapman v. N.Y. State Div. for Youth*,

546 F.3d 230, 235 (2d Cir. 2008) (citing *Patane v. Clark*, 508 F.3d 106, 111 (2d Cir. 2007) (per curiam)).

Rule 15 of the Federal Rules of Civil Procedure declares that "[t]he court should freely give leave [to amend] when justice so requires." *See* Fed. R. Civ. P. 15(a)(2). In *Foman v. Davis*, the Supreme Court stated, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). According to the Supreme Court, however, a court may deny a motion for leave to amend for reasons "'such as (1) undue delay, bad faith or dilatory motive on the part of the movant, (2) repeated failure to cure deficiencies by amendments previously allowed, (3) undue prejudice to the opposing party by virtue of the allowance of the amendment, [or] (4) futility of amendment, . . .'" *Cummings v. FCA US LLC*, 401 F. Supp. 3d 288, 302 (N.D.N.Y. 2019) (quoting *Foman*, 371 U.S. at 182, 83 S. Ct. 227; *S.S. Silberblatt, Inc. v. E. Harlem Pilot Block-Bldg. 1 Hous.*, 608 F.2d 28, 42 (2d Cir. 1979)). "An amendment is considered futile if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Champion v. Kirkpatrick*, No. 9:18-CV-1498 (MAD/ML), 2019 WL 4451255, *4 (N.D.N.Y. Sept. 17, 2019).

### B. Plaintiff's first cause of action for violation of her substantive due process rights by interfering with her parent-child relationship

#### 1. *Plaintiff's original complaint*

"Families have 'a substantive right under the Due Process Clause "to remain together without the coercive interference of the awesome power of the state."'" *McLoughlin v. Rensselaer Cnty. Dep't of Soc. Servs.*, No. 1:18-CV-487 (LEK/CFH), 2019 U.S. Dist. LEXIS 137120, *28 (N.D.N.Y. Aug. 14, 2019) (quoting *Tenenbaum* [*v. Williams*], 193 F.3d [581,] 600

[(2d Cir. 1999)] (quoting *Duchesne*, 566 F.2d at 825)). "Substantive due process 'provides heightened protection against government interference with certain fundamental rights and liberty interests.'" *Uwadiegwu v. Dep't of Soc. Servs.*, 91 F. Supp. 3d 391, 398 (E.D.N.Y. 2015) (quotation omitted).

"To state a claim for a violation of substantive due process, a plaintiff must demonstrate that the state action was 'so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection.'" *Id.* (quoting *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 275 (2d Cir. 2011) (quoting *Tenenbaum*, 193 F.3d at 600)). "State action that is 'incorrect or ill-advised' is insufficient to give rise to a substantive due process violation; rather, the action must be 'conscience-shocking.'" *Id.* (quoting *Cox*, 654 F.3d at 275 (quoting *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995))). "'Only the most egregious official conduct can be said to be arbitrary in the constitutional sense and therefore unconstitutional.'" *Id.* (quoting *Cox*, 654 F.3d at 275) (quoting *Tenenbaum*, 193 F.3d at 600)).

"'[A]bsent truly extraordinary circumstances, a brief deprivation of custody is insufficient to state a substantive due process … claim.'" *Id.* (quoting [*Cox*, 654 F.3d at 276] (citing cases)). "This is because such deprivations do '"not result in the parents' wholesale relinquishment of their right to rear their children," so they are not constitutionally outrageous or conscience-shocking.'" *Id.* (quoting [*Cox*, 654 F.3d at 275] (quoting *Nicholson v. Scoppetta*, 344 F.3d 154, 172 (2d Cir. 2003))). Finally, "'[w]here there is no actual loss of custody, no substantive due process claim can lie.'" *Id.* (quoting *Cox*, 654 F.3d at 276) (citing cases)).

Plaintiff argues that Defendants violated her substantive due-process rights to intimate familial association. *See* Dkt. No. 1 at ¶¶ 47-52; *see also* Dkt. No. 10-1, Pl's Memorandum of

Law, at 13-17. However, it is undisputed that CK was not removed from the family home; rather, Plaintiff had to vacate the home in light of CK's court-issued orders of protection against her. *See* Dkt. No. 5-1, Def's Memorandum in Support of Mot. Dismiss, at 15. There was also no "wholesale relinquishment" of Plaintiff's rights with respect to CK. Although Plaintiff contends that her estranged husband was granted physical custody of CK, this was not Defendants' decision, but that of the Family Court. "The Family Court is the entity responsible for denying Plaintiff custody of [her] child[ ], not Defendants. If Plaintiff [took] issue with the decisions of the Family Court, [s]he [was] free to challenge those in the appropriate forum – the Family Court." *Uwadiegwu*, 91 F. Supp. at 399. Plaintiff had the opportunity to challenge the Family Court's decision in a State Court Article 78 Proceeding, but she failed to do so. *See* Dkt. No. 5-1 at 19, n.6.

As Defendants point out, Plaintiff's factual claims amount to the following: (1) Defendant Baldwin allegedly told CK that Plaintiff had mental health issues and should have been on medication but was not; (2) Defendants gave "preference" to Plaintiff's estranged husband as to which parent should retain custody of CK during the ongoing DSS investigation; (3) Defendants "improperly" assigned Dr. Silverman as the Family Mental Health counselor for Plaintiff and CK because his office was located in the same building as Defendants; and (4) Defendants did not listen to Plaintiff's "story" and that in one instance Defendant Woods "rolled her eyes" at Plaintiff.[3] *See* Dkt. No. 5-1 at 14, 16 (citing Dkt. No. 1 at ¶¶ 17, 20, 25, 27). None of these actions are "arbitrary, shocking, or egregious."

---

[3] Notably, Plaintiff has not alleged any facts demonstrating *how* Defendants Baldwin or Woods "unlawfully" gave "preference to" and "aided and abetted" Plaintiff's estranged husband or *how* assigning Dr. Silverman as Plaintiff's Family Mental Health counselor "unlawfully" interfered with her parent-child relationship. *See* Dkt. No. 5-1 at 14.

Plaintiff has failed to allege any facts in her original complaint that show that she suffered an actual loss of custody or that Defendants engaged in "conscience-shocking" conduct. Thus, the Court grants Defendants' motion to dismiss Plaintiff's first cause of action.

### *2. Plaintiff's proposed amended complaint*

With respect to Plaintiff's proposed amended complaint, she does not allege any additional facts about Defendants' conduct that would shock the conscience. *See generally* Dkt. No. 10-2, Proposed Amended Compl. For example, Plaintiff alleged, "[u]pon information and belief, without disclosing the contents of Dr. Silverman's report to the Court, [Defendant County] procured a restraining order against [P]laintiff, keeping [her] away from CK and [P]laintiff's home." *Id.* at ¶¶ 29-30. Additionally, Plaintiff alleged that she "pleaded with [D]efendants for several months to allow her [to] have some kind of contact and communication with CK, but [D]efendants refused"; and, in response to Plaintiff's requests, Defendant Baldwin told Plaintiff "that the only thing she could do at the time was to write a letter to CK, and explain to CK how bad she [[P]laintiff] is as a mother – as a condition for [P]laintiff to have any kind of contact or communication with CK." *Id.* at ¶¶ 31-32.

Plaintiff also alleged that, despite her estranged husband's history of domestic violence, Defendants offered him a "plea deal" of adjournment in contemplation of dismissal but did not offer Plaintiff that same deal. *See id.* at ¶ 33. According to Plaintiff, this conduct, in addition to falsely telling the Family Court on numerous occasions that Plaintiff did not want to have contact with CK, amounted to "aid[ing] and abet[ing]" Plaintiff's estranged husband's manipulation of CK and his using CK to "perpetrate and perpetuate domestic violence, physical, mental, and psychological abuse against [P]laintiff." *Id.* at ¶¶ 52-53, 69.

Finally, Plaintiff alleged that "Defendants, without cause and justification, implanted and perpetuated the motion and idea in CK's mind that [P]laintiff was the cause of all of the problems in their family … despite the fact that [P]laintiff was the only parent making the effort to raise CK in the best moral manner possible." *Id.* at ¶ 71.

None of these facts, even when taken as true, show that Defendants removed CK from Plaintiff's custody or acted in a way that was so egregious as to "shock the conscience" and violate Plaintiff's substantive due process rights to familial association. These allegations would not survive a Rule 12(b)(6) motion to dismiss; and, as such, amending this cause of action would be futile.

### C. Plaintiff's second cause of action for violations of her substantive due process rights to privacy

#### 1. *Plaintiff's original complaint*

"The Supreme Court has long recognized a right to privacy protected by the Due Process Clause of the Fourteenth Amendment." *Rutherford v. Katonah-Lewisboro Sch. Dist.*, 670 F. Supp. 2d 230, 239 (S.D.N.Y. 2009) (citing *Whalen v. Roe*, 429 U.S. 589, 598-600, 97 S. Ct. 869, 51 L. Ed. 2d 64 (1977)). "The substantive due process right to privacy involves at least two different kinds of interests. One is the interest in autonomy when making certain types of important decisions, such as those concerning marriage, procreation, and child rearing." *Id.* (citation omitted). This is the substantive due process right that Plaintiff alleged in her first cause of action. "The other is the 'interest in avoiding disclosure of personal matters,' … often characterized as the 'right to confidentiality[.]'" *Id.* (quoting *O'Connor v. Pierson*, 426 F.3d 187, 201 (2d Cir. 2005)) (internal citation omitted). "[T]he right to confidentiality includes the right to protection regarding information about the state of one's health." *Doe v. City of New York*, 15 F.3d 264, 267 (2d Cir. 1994). This is the substantive due process right that Plaintiff

alleges in her second cause of action. Both types of substantive due process interests require Plaintiff to show that the government action was "arbitrary in a constitutional sense," which, as discussed above, means that it "shocks the conscience." *See O'Connor v. Pierson*, 426 F.3d 187, 203 (2d Cir. 2005).

The constitutional right of privacy can attach to serious medical conditions, but courts examine whether a condition is protected on a case-by-case basis. *See Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57, 64-67 (2d Cir. 2011). Courts have found that HIV/AIDS and transsexualism are serious medical conditions that carry a social stigma and favor a constitutional right to privacy. *See id.*; *see also Doe*, 15 F.3d at 264; *Powell v. Schriver*, 175 F.3d 107 (2d Cir. 1999). Few, if any, other medical conditions have been afforded such protection.

Here, Plaintiff generally alleges that Defendant Baldwin "intentionally and unjustifiably disclosed [P]laintiff's protected health information to [P]laintiff's then minor child CK; to the effect that [P]laintiff 'has mental health issues,' or words to that effect, and furthermore 'that [P]laintiff should be on medication but she is not,' or words to that effect." *See* Dkt. No. 1 at ¶ 17. Plaintiff's unspecified "mental health issues" are not a protected medical condition to which the constitutional right to privacy attaches. In addition, Defendant Baldwin merely voiced her *opinion* to CK regarding Plaintiff's medical issues. Plaintiff does not contend that any Defendant at any time disclosed any of her actual medical records or documentation. *See id.* Although Defendant Baldwin's remark may have been unwise, it was not so arbitrary as to shock the conscience, and it was merely a statement of opinion. Thus, the Court finds that Plaintiff has not adequately pled her second cause of action in her original complaint and grants Defendants' motion to dismiss that claim.

### *2. Plaintiff's proposed amended complaint*

With respect to Plaintiff's proposed amended complaint, she does not allege any additional facts about Defendants' conduct that would shock the conscience. *See generally* Dkt. No. 10-2. Relevant to Plaintiff's second cause of action, she alleged that neither Defendants Baldwin nor Woods were trained mental health professionals qualified to diagnose Plaintiff, nor were they rendering any mental health treatment to her. *See id.* at ¶¶ 36, 40. Furthermore, Plaintiff alleges that—following Defendant Baldwin's remark to CK—CK said to Plaintiff, "I don't have to talk to you, Lana said that you have mental issues and should be on medication but you are not[.]" *Id.* at ¶ 38. Finally, Plaintiff claims that, from May 2015 through May 2017, Defendant Woods, "while cloaked with authority by [Defendant County], [and] without [P]laintiff's authorization, stated on numerous occasions during Family Team Meetings that [P]laintiff 'has serious mental health issues' or words to that effect." *Id.* at ¶ 39.

None of these additional facts, even if taken as true, show that Defendants revealed protected medical information in violation of Plaintiff's constitutional right to privacy or that they engaged in conduct that was so egregious it would "shock the conscience." The fact that Defendants Baldwin and Woods were not medical providers treating Plaintiff and did not have access to her medical records actually supports Defendants' argument that Defendant Baldwin was merely stating her *opinion* to CK. The added facts in Plaintiff's amended complaint would not permit her second cause of action to survive a Rule 12(b)(6) motion to dismiss. Thus, the Court finds that amending this cause of action would be futile.

### D. Plaintiff's third cause of action for abuse of legal process

#### 1. *Plaintiff's original complaint*

"'"[S]ection 1983 liability … may not be predicated on a claim of malicious abuse of … *civil* process."'" *Green v. Mattingly*, 585 F.3d 97, 104 (2d Cir. 2009) (quoting *Cook v. Sheldon*, 41 F.3d 73, 79-80 (2d Cir. 1994) (quoting *Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir. 1992))). Although civil abuse of process cases may be brought under state law, *see id.* at 103-04, the heading for Plaintiff's third cause of action makes clear that she is alleging "abuse of legal process" pursuant to 42 U.S.C. § 1983. *See* Dkt. No. 1 at p. 9. Plaintiff alleges that Defendants "abused a legal process by utilizing regularly issued legal process to achieve collateral objectives." *See id.* at ¶ 60. Those "collateral objectives" were allegedly "outside the legitimate ends of the process" and were "to the detriment of [P]laintiff's constitutionally and statutorily protected parental rights and interest." *See id.* at ¶¶ 61-62.

The only process to which Plaintiff refers throughout her original complaint is a Family Court proceeding, which is a civil proceeding, that occurred between 2015 and May 2017. *See id.* at ¶¶ 23-24. Plaintiff contends that, during that Family Court proceeding, Defendants "unjustifiably aided and abetted" Plaintiff's estranged husband to get custody of CK and "constantly put … CK in harmful situations which has caused severe and irreparable harm to [P]laintiff's child." *See id.* There are no other allegations in Plaintiff's original complaint regarding the Family Court proceeding. *See generally id.* Since civil proceedings cannot be the basis of a § 1983 abuse of process claim, the Court grants Defendants' motion to dismiss Plaintiff's third cause of action.

### 2. *Plaintiff's proposed amended complaint*

In Plaintiff's proposed amended complaint, she alleges that Defendants offered her estranged husband a "plea deal" of adjournment in contemplation of dismissal but would not offer Plaintiff that same deal. *See* Dkt. No. 10-2 at ¶ 33. This language appears to refer to Plaintiff's and her estranged husband's neglect proceedings in Family Court. There are no references to criminal court proceedings, nor does Plaintiff allege a cause of action for abuse of process under New York law. Thus, the Court finds that Plaintiff's proposed amended complaint fails to state a claim for abuse of process pursuant to 42 U.S.C. § 1983 and is futile.

**E. The pleadings in this action**

The original complaint that Mr. Uba filed on Plaintiff's behalf contained barely any facts, and the few facts that were contained in that pleading were not presented in any logical order, nor did they demonstrate why Plaintiff was entitled to relief. *See generally* Dkt. No. 1. Moreover, it is worth noting that Mr. Uba omitted the important fact that the Schoharie County Family Court had issued *three* orders of protection protecting CK from Plaintiff, all of which Plaintiff violated. In fact, the second and third orders of protection were complete "stay away" orders; and, after her third violation, Plaintiff was arrested and prosecuted. *See* Dkt. No. 11-1, Ex. A.

In addition, the proposed amended complaint that Mr. Uba filed on Plaintiff's behalf amounted to nineteen pages of ramblings that, essentially, claimed that the Family Court was wrong to grant custody to Plaintiff's estranged husband (CK's father) instead of to her. *See generally* Dkt. No. 10-2. Rather than appeal that Order, Plaintiff filed this action claiming, in substance, that it was Defendants' fault that she did not have a good relationship with her now-

adult child.  In fact, Plaintiff specifically stated in her demand for damages in her amended complaint that,

> [a]s a result of the unlawful interference in [P]laintiff's parent-child relationship by these [D]efendants, which interference prevented [P]laintiff from raising CK in the moral manner that she deems fit, CK became pregnant at the age of 17, is about to have her second child at the age of 20, has been unable to attend college, and has been referred to as "incredibly immature" by Sharon Rivlin (CK's Psychologist). These are all contrary to the moral character that [P]laintiff intended to instill in CK but was prevented from doing so because of the unlawful interference in [P]laintiff's parent-child relationship by these [D]efendants.
>
> The relationship between mother and child are [sic] presently so irretrievably damaged to the extent that CK has refused to allow [P]laintiff [to] have any relationship with her grandchild – CK's child, even though [P]laintiff desperately wants to have a good relationship with CK, and CK's offspring.

*See id.* at ¶¶ 81-82.

This "interference" that so damaged Plaintiff's relation with CK was one remark that a caseworker made to CK that Plaintiff has "mental health issues."  Meanwhile, Mr. Uba appeared to ignore the fact that Plaintiff had a history of using physical violence against her daughter; and, by law, she was not allowed to have contact with CK.  *See* Dkt. No. 11-1, Ex. A.

These pleadings clearly do not comply with the requirement of Rule 8 of the Federal Rules of Civil Procedure that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2).  Moreover, they border on the frivolous; and, had Mr. Uba been forewarned of the Court's inclination to do so, would warrant the imposition of sanction.

It is well-settled that "[t]he court has inherent power to sanction . . . attorneys, a power born of the practical necessity that courts be able 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'"  *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 78 (2d Cir. 2000) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S. Ct. 2123, 115

L. Ed. 2d 27 (1991)). In addition, Rule 11(b) requires that an attorney certify that, "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: … the claims, defenses, and other legal contentions are warranted by existing law …. [and] the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery…" Fed. R. Civ. P. 11(b)(2)-(3).

The Court hereby puts Mr. Uba on notice that any future disregard for these rules or any other Federal or Local Rules of Practice **shall** be grounds for the imposition of sanctions.

### IV. CONCLUSION

After carefully considering the entire file in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion to dismiss Plaintiff's original complaint, *see* Dkt. No. 5, is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's motion for leave to file an amended complaint, *see* Dkt. No. 10, is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendant and close the case.

**IT IS SO ORDERED.**

Dated: March 27, 2020

      Syracuse, New York

                                Frederick J. Scullin, Jr.
                                Senior United States District Judge